IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

Kansas Turnpike Authority,

          Plaintiff,

vs.                                         Case No. 6:23-CV-1122-JAR-GEB

Kimberly Anne Porter,

          Defendant.

## PLAINTIFF'S RESPONSE TO THE
## NOTICE AND ORDER TO SHOW CAUSE

Plaintiff Kansas Turnpike Authority responds to Defendant Kimberly Anne Porter's brief on this Court's Notice and Order to Show Cause why this case should not be remanded to the Sedgwick County District Court for lack of subject matter jurisdiction. This Court lacks subject matter jurisdiction and should remand this case to the Sedgwick County District Court.

## INTRODUCTION

KTA filed suit in the Sedgwick County District Court on February 9, 2023, against Ms. Porter after she traveled the Turnpike 327 times between December 6, 2021, and January 13, 2023, without paying tolls. Ms. Porter even had a K-TAG contract, but failed and refused to pay the tolls. KTA filed suit for the tolls, civil penalties for toll evasion, and administrative fees, totaling $5,507.10, plus attorney fees, pre-judgment interest, and costs. Further, K.S.A. 68-2020 grants KTA a lien on the vehicle, and KTA requested judgment and foreclosure of the lien by statute.

1

Ms. Porter filed a pro se answer on March 3, 2023, arguing she was entitled to lost wages for answering. Ms. Porter retained counsel, who entered an appearance on April 12, 2023. KTA issued discovery on April 19, 2023. Defendant filed a Notice of Removal in the Sedgwick County District Court on May 12, 2023, but did not file in federal court until June 13, 2023.

## ARGUMENTS & AUTHORITIES

28 U.S.C. § 1447 requires the District Court to remand a case before it if the Court lacks subject matter jurisdiction. The order remanding may include payment of costs and expenses, including any attorney fees incurred as a result of the removal. This Court lacks subject matter jurisdiction in this case and should remand the case back to the Sedgwick County District Court. KTA has incurred attorney fees reviewing the removal and filing this response and this Court should award attorney fees to KTA if it remands the case.

Under 28 U.S.C. § 1331, the District Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Ms. Porter argues her defense is the Turnpike is unconstitutional, and that defense gives this Court subject matter jurisdiction because it raises a federal question. This argument is without merit.

The general rule is that "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). A defense like federal pre-emption does not allow removal because it does not appear on the face of a plaintiff's complaint. *Id.*

JST 491134

Ms. Porter asserts that Congress may completely pre-empt an area, and complete pre-emption does allow removal. She asserts that tolls on the interstate highway is such an area of pre-emption. This assertion is incorrect, both on a national level and with respect to Kansas in particular.

The United States Supreme Court has stated that complete pre-emption is "extraordinary" in nature. *Id.* at 64. The determining factor of pre-emption is not whether it is obvious but whether Congress has shown an intention to complete pre-empt the area. *Id.* at 65. Pre-emption does not mean that there is a federal question, and pre-emption is not always complete pre-emption. *Moeller v. Holland LP*, 2022 U.S. Dist. LEXIS 23043 * 13, 2022 WL 392461 (D.N.M. Feb. 9, 2022).

There are very few areas the Courts have found complete pre-emption. The *Moeller* court noted that as of 2022, the United States Supreme Court has only recognized complete pre-emption in three areas: the Labor Management Relations Act, the Employee Retirement Income Security Act, and the National Bank Act. *Id.* at * 7. This Court should follow the advice of Justice Brennan, in his concurrence in *Taylor*, in which he wrote "[i]n future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court." 481 U.S. at 68 (Brennan, J., concurring) (emphasis in original). Ms. Porter has presented no caselaw and no analysis beyond her own that Congress manifested a clear intent to remove all unpaid state toll cases to federal court.

JST 491134

Ms. Porter cites to 23 U.S.C. § 301 for her contention that pre-emption is complete and absolute. In doing so, she ignores the relevant portions of the statute, cherry-picking the sound bites that support her contentions, as with her caselaw citations. But it is not proper to ignore the context and the full text of authorities.

23 U.S.C. § 301 states:

> Except as provided in section 129 of this title with respect to certain toll bridges and toll tunnels, all highways constructed under the provisions of this title shall be free from tolls of all kinds.

Ms. Porter omitted the initial clause of the statute – **"except as provided in section 129 of this title with respect to certain toll bridges and toll tunnels"** – which is extremely relevant to the question of whether Congress was absolute regarding its use of "all." It was not. 23 U.S.C. § 129 contains enough exceptions that you could drive a truck through them. Further, the middle portion of the sentence is also vital – **"highways constructed under the provisions of this title."** This portion of the statute proves fatal to Ms. Porter's contentions.

The Kansas Turnpike, along with the Kansas Turnpike Authority, predates the Interstate Highway System. The Turnpike was not built with federal funds. It has never received federal funds. This is not a federal question, and this is not a federal matter. There is no federal subject matter jurisdiction.

The Kansas Legislature created the Kansas Turnpike Authority in 1953. K.S.A. 68-2003 and Ex. A, House Appropriations Committee, Testimony of Michael Johnston, President/CEO, Kansas Turnpike Authority (Jan. 24, 2013). Its purpose was to link Kansas City, Topeka, and Wichita by modern roads. *Id.* The Turnpike broke ground December 31, 1954, and opened to traffic October 25, 1956. *Id.*

4

The Interstate Highway System – often considered one of Dwight D. Eisenhower's principal achievements – was created through the Federal-Aid Highway Act of 1956 (National Interstate and Defense Highways Act of 1956), which became law less than 4 months before the Turnpike opened. Pub. L. 84-627, Jun. 29, 1956. To prevent paving parallel paths, the Act designated currently-existing toll roads as interstate highways.  Indeed, 23 U.S.C. § 301 became public law on August 27, 1958 –two years after traffic began traveling the Turnpike. Pub. L. 85-767, Aug. 27, 1958. The Turnpike was not constructed under 23 U.S.C. § 301 and the prohibition on tolls (well-excepted by 23 U.S.C. § 129) does not apply.

A series of Federal-Aid Highway Acts have been enacted throughout the Twentieth Century. The Kansas Turnpike, however, has never received federal funds. House Appropriations Committee, Testimony of Michael Johnston, President/CEO, Kansas Turnpike Authority (Jan. 24, 2013). The Turnpike has been financed solely through revenue bonds, with no state or federal tax revenue. *Id.*

Ms. Porter has no defense based on federal law, let alone a federal question or federal complete pre-emption, that gives this Court subject matter jurisdiction over KTA's state law claim.  And KTA's cause of action is based in state law. K.S.A. 68-2020 states:

> any person who uses any turnpike project and fails or refuses to pay toll provided therefor shall be punished by a fine of not more than one hundred dollars ($100) or by imprisonment for not more than thirty (30) days, or both, and in addition thereto the authority shall have a lien upon the vehicle driven by such person for the amount of such toll and may take and retain possession thereof until the amount of such toll and all charges in connection therewith shall have been paid.

JST 491134

K.S.A. 60-2020a also assesses toll-evasion civil penalties, administrative fees, and costs. This is not a question of a federal claim disguised as a state claim. There is no artful pleading here.

The "artful pleading" doctrine allows removal when "the plaintiff necessarily has available no legitimate or viable state cause of action, but only a federal claim . . . ." *918 Riderz, Inc. v. Wells*, 2009 U.S. Dist. LEXIS 73241 * 5-6, 2009 WL 2588863 (N.D. Okla. Aug. 19, 2009). The "artful pleading" doctrine is not favored by the District Courts. The District Court of Kansas, for example, has described it as "construed narrowly," "only in exceptional circumstances," "so extraordinary," and "with great caution." *Howard v. Hibbard Brown & Co., Inc.*, 835 F. Supp. 1331, 1332-34 (D. Kan. 1993). These modifiers do not apply to this case.

Ms. Porter cites to *Gulf Oil Corp. v. Copp Paving Co.* 419 U.S. 186 (1974). She notes that the Ninth Circuit held that the intrastate production and use of asphalt on interstate highways was interstate commerce, meeting the jurisdictional requirements of national anti-trust laws. Ms. Porter fails to disclose that the Ninth Circuit's holding was reversed by the United States Supreme Court, who held there was no demonstrated impact on interstate commerce. *Id.* at 202-03. Likewise, the *Lake Irwin Coalition* court remanded that case, stating

> the Court is not convinced that this is sufficient to raise a 'substantial' federal issue and invoke the 'exceedingly narrow' federal question jurisdiction, particularly in light of the localized nature of the suit as currently constituted . . . 'In the interest of comity and federalism, these types of disputes involving state law and local issues should be resolved in state court, absent compelling reasons to the contrary.

2023 U.S. Dist. LEXIS 102364 *15 (D.Colo. June 12, 2023).

6

JST 491134

Ms. Porter also cites to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing.* 545 U.S. 308 (2005). The *Grable* court held that federal tax litigation is substantially related to a federal issue enough to permit hearing by a federal court. Again, the court here discusses the complaint's face demonstrating a right to relief on federal law. *Id.* at 313. And again, the court here only finds jurisdiction for significant, substantial, and serious federal interests. This is not a case regarding the requirements of the National Environmental Policy Act, nor is it a case about the construction of a state highway interchange.

This is a claim for damages and statutory penalties under the Kansas statutes, originally pled in a Kansas district court, for failure to pay tolls on a road constructed at the behest of the Kansas Legislature and financed entirely by a quasi-state-governmental entity. There is nothing federal about this case. This Court should remand this case to the Sedgwick County District Court.

WHEREFORE, Plaintiff Kansas Turnpike Authority respectfully requests this Court remand this case back to the Sedgwick County District Court, as this Court lacks subject matter jurisdiction, that this Court award attorney fees to Plaintiff upon remand, and for such other and further relief this Court deems just and equitable.

*KTA vs. Kimberly Anne Porter*
U.S. District Court, Case No. 6:23-CV-01122-JAR-GEB

> Respectfully submitted,
>
> BUTLER & ASSOCIATES, P.A.
>
> */s/ Stephanie B. Poyer*
> Stephanie B. Poyer             #25055
> 5835 SW 29th St., Ste. 101
> Topeka, KS  66614
> Ph. (785) 267-6444
> Fax (785) 267-7341
> Cnc@butlerlaw.com
> *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 3rd day of August 2023, I caused a true and correct copy of the above  Plaintiff's Response to the Notice and Order to Show Cause to be placed in the United States Mail, postage prepaid, addressed as follows:

Adam Mack
Mack & Associates, LLC
2850 SW Mission Woods Drive
Topeka, KS  66614
*Attorney for Defendant*

> */s/ Stephanie B. Poyer*
> Stephanie B. Poyer